IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:19-CR-82-1-D
No. 4:24-CV-75-1-D

| | | |
|---|---|---|
| DARYL LEE GODETTE, Petitioner, | ) | |
| v. | ) | **ORDER** |
| UNITED STATES OF AMERICA, Respondent. | ) | |

On May 20, 2024, Daryl Lee Godette ("Godette" or "petitioner") moved pro se under 28 U.S.C. § 2255 to vacate, set aside, or correct his 360-month sentence [D.E. 193]. On April 14, 2025, Godette moved for an order to show cause why Godette should not be granted relief under section 2255 [D.E. 196]. On December 22, 2025, Godette amended his motion to vacate, set aside, or correct his sentence [D.E. 200]. On February 17, 2026, the United States moved to dismiss Godette's motions [D.E. 204] and filed a memorandum in support [D.E. 205]. See Fed. R. Civ. P. 12(b)(6). On March 11, 2026, Godette replied in opposition [D.E. 207]. As explained below, the court denies Godette's motion to show cause, grants the United States' motion to dismiss, dismisses Godette's section 2255 motion, and denies a certificate of appealability.

I.

In July 2018, the Havelock Police Department ("HPD") in Havelock, North Carolina, and the Carteret County Sheriff's Office investigated Bobbie Jean Hoover ("Hoover") for selling heroin and fentanyl. See Presentence Investigation Report ("PSR") [D.E. 167] ¶ 16. The officers arranged a series of controlled purchases of heroin and fentanyl from Hoover through a

confidential informant ("CI"). See id. The CI successfully made five purchases of heroin between July 17 and October 21, 2019, and one purchase of fentanyl on October 25, 2019. See id.

On July 17, 2019, Godette drove Hoover to the first controlled purchase. See id. at ¶ 17. At the exchange, Hoover referred to her supplier as "the guy" or "the dude." Id. On July 22, 2019, officers began surveilling Godette. See id. The surveillance confirmed that Godette supplied Hoover with the heroin for the controlled purchase on July 25, 2019. See id.

On August 2, 2019, officers executed a search warrant of Godette's residence in Newport, North Carolina, and an apartment Godette frequented in Havelock, North Carolina, which officers believed to be his stash house for drugs. See id. at ¶¶ 18–19. Officers observed Godette arrive at the apartment and leave soon thereafter. See id. at ¶ 18. Officers approached Godette while he was in his car and ordered him to exit it. See id. Godette did not exit the car and instead fled the scene in his car. See id. Officers chased Godette, and Godette pulled into an apartment complex, jumped out of his car, and attempted to run. See id. Officers blocked Godette's escape and ordered Godette to the ground. See id. When Godette refused, officers arrested him. See id. Officers took Godette to HPD where he refused to speak to officers. See id. During the search of the Havelock residence, officers discovered 1,254.74 grams of heroin and drug paraphernalia. See id. at ¶ 19. While Godette was in custody, Hoover participated in two controlled purchases. See id.

On December 11, 2019, a grand jury in the Eastern District of North Carolina indicted Godette for one count of conspiracy to distribute and possession with intent to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and (B), and 846, and five counts of distributing heroin in violation of 21 U.S.C. §§ 841(a)(1) and 18 U.S.C. § 2. See [D.E. 1] 1, 2–4. The grand jury charged Hoover as Godette's co-conspirator. Id. at 1.

On December 19, 2019, authorities arrested Hoover. PSR ¶ 20. Hoover told authorities that she met Godette in August 2018 and soon started purchasing heroin from him. Id. at ¶ 21. She began by purchasing 0.2 to 0.3 grams of heroin from Godette two to three times per week, and then increased the frequency to one gram every day for 11 months. Id. Godette assaulted her on three occasions after she was robbed of heroin that she obtained from him for resale. Id. at ¶ 22. Officers believed that Godette was the leader and organizer of a heroin distribution operation. Id. at ¶ 23.

On December 9, 2020, Godette pleaded not guilty [D.E. 68]. On December 12, 2020, after the initial filing deadline had passed, Godette moved for leave to file a motion to suppress evidence [D.E. 70]. On December 15, 2020, the government opposed the motion [D.E. 71]. On December 18, 2020, the court granted Godette's motion as to any evidence produced after November 2, 2020 [D.E. 72].

On March 23, 2021, a grand jury returned a superseding indictment against Godette that did not include Hoover [D.E. 87]. The grand jury indicted Godette for one count of conspiracy to distribute and possession with intent to distribute one kilogram or more of heroin, four counts of distribution of a quantity of heroin and aiding and abetting, and one count of possession with intent to distribute one kilogram or more of heroin. See PSR ¶ 67. In early June 2021, Hoover entered a plea agreement in which she pleaded guilty to two heroin distribution counts and agreed to testify against Godette in exchange for having six felony charges against her dropped. See [D.E.181] 214–15. On June 10, 2021, Godette pleaded not guilty [D.E. 116].

On June 30, 2021, following a three-day trial, a jury found Godette guilty on all counts [D.E. 143]. On December 13, 2021, the court sentenced Godette to 360 months' concurrent imprisonment on each count [D.E. 171].

On December 22, 2021, Godette appealed [D.E. 173]. On January 6, 2023, the United States Court of Appeals for the Fourth Circuit affirmed Godette's conviction and sentence. See United States v. Godette, No. 22-4007, No. 22-4011, 2023 WL 119580, at *1 (4th Cir. Jan. 6, 2023) (per curiam) (unpublished).

II.

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted" tests a complaint's legal and factual sufficiency. Fed. R. Civ. P. 12(b)(6); see Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–63, 570 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In considering a motion to dismiss, a court need not accept a section 2255 petition's legal conclusions. See, e.g., Iqbal, 556 U.S. at 678. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 677–79. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). In reviewing a section 2255 motion, the court is not limited to the motion itself. The court may consider "the files and records of the case." 28 U.S.C. § 2255(b); see United States v. Dyess, 730 F.3d 354, 359–60 (4th Cir. 2013); United States v. McGill, 11 F.3d 223, 225–26 (1st Cir. 1993); Raines v. United States, 423 F.2d 526, 529–30 (4th

Cir. 1970) (per curiam). Likewise, a court may rely on its own familiarity with the case. See, e.g., Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977).

The "Sixth Amendment entitles criminal defendants to the effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." Bobby v. Van Hook, 558 U.S. 4, 7 (2009) (per curiam) (quotations omitted). The Sixth Amendment right to counsel extends to all critical stages of a criminal proceeding, including plea negotiations, trial, sentencing, and appeal. See, e.g., Lee v. United States, 582 U.S. 357, 363–65 (2017); Lafler v. Cooper, 566 U.S. 156, 164–65 (2012); Missouri v. Frye, 566 U.S. 134, 140 (2012); Glover v. United States, 531 U.S. 198, 203–04 (2001).

To state a claim of ineffective assistance of counsel in violation of the Sixth Amendment, Godette must show that his counsel's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result. See Strickland v. Washington, 466 U.S. 668, 687–91 (1984); United States v. Mayhew, 995 F.3d 171, 176 (4th Cir. 2021). Because "[a]n ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, . . . the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve." Harrington v. Richter, 562 U.S. 86, 105 (2011) (quotations omitted); see Weaver v. Massachusetts, 582 U.S. 286, 302–03 (2017); Jackson v. Kelly, 650 F.3d 477, 493 (4th Cir. 2011).

When determining whether counsel's representation was objectively unreasonable, a court must be "highly deferential" to counsel's performance and must attempt to "eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689. Therefore, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional

assistance." Id. "There is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." Harrington, 562 U.S. at 109 (quotations omitted); see Yarborough v. Gentry, 540 U.S. 1, 8 (2011). A party also must show that counsel's deficient performance prejudiced the party. See Strickland, 466 U.S. at 691–96. A party does so by showing a "reasonable probability" that, but for the deficiency, "the result of the proceeding would have been different." Id. at 694; Glover, 531 U.S. at 203–04.

In reviewing a section 2255 petition, the court is not limited to the petition itself. The court may consider "the files and records of the case." 28 U.S.C. § 2255(b); see Dyess, 730 F.3d at 359–60; McGill, 11 F.3d at 225. Likewise, a court may rely on its own familiarity with the case. See, e.g., Blackledge, 431 U.S. at 74 n.4.

Godette asserts that his defense counsel performed deficiently because defense counsel (1) did not move to suppress evidence from the search of the Havelock apartment and did not request a Franks hearing, (2) failed to move for dismissal of counts one through five of Godette's superseding indictment, (3) did not adequately impeach the credibility of the government's witnesses at trial, (4) did not properly investigate Godette's innocence, and (5) had an actual conflict of interest. See [D.E.193-1] 13–18; [D.E. 200] 2–8. Godette also asserts he was convicted and sentenced in violation of the Fifth Amendment's Due Process Clause because (1) the superseding indictment was deficient, and (2) Godette's sentence exceeded the statutory maximum. See [D.E. 193-1] 18–23.

A.

Godette asserts that he was denied effective assistance of counsel because defense counsel did not move to suppress evidence obtained from law enforcement's search of the Havelock apartment or request a Franks hearing. See id. at 13; [D.E. 200] 2–4. Godette contends that police

did not have probable cause to search the Havelock apartment because the search warrant contained false and misleading information. See [D.E. 193-1] 14. Godette also argues that authorities lacked probable cause to believe the Havelock apartment was a stash house. See [D.E. 200] 3. According to Godette, a Franks hearing would have resulted in excluding the evidence from the Havelock apartment. See [D.E. 193-1] 14.

Under the Fourth Amendment, a defendant is entitled to attack a facially valid search warrant if an officer intentionally made false or misleading statements in a warrant's affidavit and the statements were necessary to finding probable cause. See, e.g., Franks v. Delaware, 438 U.S. 154, 155–56 (1978). This exception is "narrow." United States v. Sanders, 107 F.4th 234, 252 (4th Cir. 2024). To invalidate a warrant under Franks, a defendant must demonstrate by a preponderance of the evidence "(1) that [the officer] made false or misleading statements in the [warrant] affidavit; (2) that the statements were made deliberately or with reckless disregard for the truth; and (3) that the statements were material to a demonstration of probable cause such that, when they are set aside, the remaining content was insufficient to establish probable cause." Jackson v. Carin, 128 F.4th 525, 534 (4th Cir. 2025); see Franks, 438 U.S. at 155–56; United States v. Pulley, 987 F.3d 370, 376–77 (4th Cir. 2021); United States v. Moody, 931 F.3d 366, 370–71 (4th Cir. 2019); United States v. White, 850 F.3d 667, 672–73 (4th Cir. 2017); United States v. Lull, 824 F.3d 109, 114 (4th Cir. 2016); Miller v. Prince George's Cnty., 475 F.3d 621, 627–28 (4th Cir. 2007), abrogated on other grounds by Pearson v. Callahan, 555 U.S. 223 (2009); United States v. Colkley, 899 F.2d 297, 301 (4th Cir. 1990); United States v. Hilton, No. 7:24-CR-105, 2026 WL 401500, at *6 (E.D.N.C. Feb. 12, 2026) (unpublished); United States v. Garrett, 809 F. Supp. 3d 306, 321 (E.D.N.C. 2025). To succeed on such a claim, Godette would have to make a "substantial preliminary showing" that the evidence supporting the search warrant was affirmatively false or

contained omissions that were designed to mislead, or was made in reckless disregard of whether they would mislead the judge. See United States v. Haas, 986 F.3d 467, 474 (4th Cir. 2021); Moody, 931 F.3d at 370; United States v. Tate, 524 F.3d 449, 454 (4th Cir. 2008).

When claiming ineffective assistance of counsel concerning a Franks hearing, a "refined" Strickland analysis applies. United States v. Pressley, 990 F.3d 383, 388 (4th Cir. 2021); see United States v. Billings, No. 22-4311, 2025 WL 636307, at *2 (4th Cir. Feb. 27, 2025) (per curiam) (unpublished); Grueninger v. Dir., Va. Dep't of Corrs., 813 F.3d 517, 524 (4th Cir. 2016). To show deficient performance, Godette must plausibly allege that the unfiled motion would have "some substance." United States v. McNeil, 126 F.4th 935, 942 (4th Cir. 2025) (quotation omitted); see Pressley, 990 F.3d at 388; Grueninger, 813 F.3d at 524–25; Tice v. Johnson, 647 F.3d 87, 104 (4th Cir. 2011). If so, Godette also must plausibly allege the absence of a reasonable strategic reason to not file the motion. See McNeil, 126 F.4th at 942; Pressley, 990 F.3d at 388. To show prejudice, Godette must plausibly allege "that the motion was meritorious and likely would have been granted" and "a reasonable probability that granting the motion would have affected the outcome of his trial." Grueninger, 813 F.3d at 525; see Kimmelman v. Morrison, 477 U.S. 365, 375 (1986); McNeil, 126 F.4th at 942; United States v. Taylor, 54 F.4th 795, 803 (4th Cir. 2022); Pressley, 990 F.3d at 388; Tice, 647 F.3d at 104.

Godette has not plausibly alleged the evidence or statements used to support the search warrant were false or misleading. See, e.g., Haas, 986 F.3d at 475. As for Godette's first allegation, the evidence presented at trial proved that the CI did make hand-to-hand buys. See PSR ¶ 16. Thus, there was no falsity in the statement that the CI made such buys. See [D.E. 194-10] 7.

As for Godette's second allegation, the officer stated that the investigation "involve[d] trafficking in fentanyl," even though the CI only bought heroin when Godette was not in custody.

See id.; PSR ¶ 16 n.1. "Involved" is a capacious term. That heroin was predominantly discovered during the investigation when Godette was in the community does not mean the investigation did not also involve fentanyl trafficking.

As for Godette's third allegation, substantial evidence suggests Godette was Hoover's supplier and that the Havelock apartment was his stash house. See [D.E. 194-6] 4–5; [D.E. 194-9] 3–4, 6–7. Godette made multiple short visits to the Havelock apartment, was seen meeting with Hoover a short time before some controlled purchases, and was arrested with $560 of the money used for a controlled purchase. See [D.E. 194-11] 8; [D.E. 194-8] 5. Not only has Godette failed to plausibly allege any false or misleading statements in the affidavit, but he also has failed to plausibly allege that the officer acted with the necessary intent to entitle him to a Franks hearing. See, e.g., Jackson, 128 F.4th at 536–37; Garrett, 809 F. Supp. 3d at 324–26.

Because Godette has not plausibly alleged that any statements in the affidavit supporting probable cause for the Havelock apartment search warrant were false or misleading, he was not entitled to a Franks hearing even if defense counsel requested one. Defense counsel's decision not to file a motion to suppress or request a Franks hearing reflects competent professional judgment. See [D.E. 193-1] 13. The Sixth Amendment did not require defense counsel to file a meritless motion. See, e.g., Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). Because a motion for a Franks hearing would have been meritless, Godette has not plausibly alleged that defense counsel's decision not to file such a motion was deficient or prejudicial. See, e.g., id. at 123–28; McNeil, 126 F.4th at 942; Pressley, 990 F.3d at 388; Grueninger, 813 F.3d at 525.

Next, Godette claims that his defense counsel was deficient for not moving to dismiss counts one through five of the superseding indictment. See [D.E. 193-1] 15. Godette contends

that he could not be convicted of conspiring with Hoover because Hoover could not conspire with the CI, who was working on behalf of the government. See id.

To prove the charged conspiracy, the United States had to prove that there was an agreement between Godette and one or more persons to engage in the charged conspiracy, that Godette knew of the conspiracy, and that Godette knowingly and voluntarily joined the conspiracy. See, e.g., United States v. Strickland, 245 F.3d 368, 384–85 (4th Cir. 2001). The evidence proved a conspiracy between Hoover and Godette and thereby proved the charged conspiracy. See, e.g., United States v. Burgos, 94 F.3d 849, 858 (4th Cir. 1996) (en banc). For example, officers observed Godette driving Hoover to the controlled purchases and observed Godette visiting the stash house multiple times. See [D.E. 194-11] 8; PSR ¶ 17. Hoover also told the CI about her dealer. See PSR ¶ 17. Moreover, Hoover provided direct evidence about the conspiracy when she testified at Godette's trial that they had an agreement for Hoover to sell Godette's heroin. See [D.E. 181] 175, 179–80. That Hoover could not conspire with the CI says nothing about whether Godette could conspire with Hoover. Godette could and did. Thus, Godette's claim fails.

Next, Godette claims defense counsel performed deficiently by failing to adequately impeach the credibility of the government's witnesses at trial, particularly the CI. See [D.E. 193-1] 16; [D.E. 200] 4. In affirming Godette's conviction, the Fourth Circuit held that the court did not err in admitting the CI's trial testimony. See Godette, 2023 WL 119580, at *4.

Godette unsuccessfully challenged on direct appeal the admission of the CI's testimony. Thus, he cannot relitigate that issue in a section 2255 motion. See, e.g., Fernandez v. United States, 146 S. Ct. 1292, 1300 (2026); Bousley v. United States, 523 U.S. 614, 621 (1998); Dyess, 730 F.3d at 360; United States v. Fugit, 703 F.3d 248, 253 (4th Cir. 2012); United States v. Linder, 552 F.3d 391, 396 (4th Cir. 2009); United States v. Roane, 378 F.3d 382, 396 n.7 (4th Cir. 2004)

As for how defense counsel attacked the credibility of government witnesses, in defense counsel's opening statement, defense counsel suggested that the CI was not credible. See [D.E. 180] 24–25. During the trial, defense counsel vigorously cross-examined the government witnesses about the CI's role in the investigation. See id. at 70–79, 130–31; [D.E. 181] 61–63. Defense counsel also extensively cross-examined Hoover and argued in closing argument that Hoover was not credible. See [D.E. 181] 213–23; [D.E. 182] 36–37, 41–43. Defense counsel noted incriminating evidence that the government failed to obtain. See [D.E. 183] 26–30. Defense counsel also highlighted evidence that tended to suggest Godette's innocence, such as Hoover continuing to sell heroin after Godette's arrest and detention. See [D.E. 180] 28.

During the trial, defense counsel thoroughly attacked the credibility of government witnesses and the investigation itself. Thus, Godette has not plausibly alleged deficient performance. See, e.g., Strickland, 466 U.S. at 687–91.

Next, Godette contends defense counsel did not properly investigate Godette's innocence. See [D.E. 193-1] 17. Godette's trial strategy was to show that the government had insufficient evidence because Hoover had multiple sources of drugs and the government failed to investigate those other sources. See id. In support, Godette noted that Hoover continued to sell heroin after Godette was arrested and detained. See [D.E. 200] 6.

The court rejects Godette's claim. The presence of other heroin dealers in the area, and Hoover's relationships with them, does not negate the evidence that Godette and Hoover conspired to sell heroin. Hoover testified that Godette repeatedly sold her heroin to sell, and the police observed Godette acting consistently with that contention. See [D.E. 194-11] 8; PSR ¶ 17. Moreover, even if Hoover had other heroin suppliers, Godette's defense counsel was not required to independently investigate those other dealers. See, e.g., Strickland, 466 U.S. at 690–91;

Wiggins v. Smith, 539 U.S. 510, 533 (2003) ("Strickland does not require counsel to investigate every conceivable line of mitigating evidence..."); Green v. French, 143 F.3d 865, 892 (4th Cir. 1998) ("Strickland does not impose a constitutional requirement that counsel uncover every scrap of evidence that could conceivably help their client."), abrogated on other grounds by Williams v. Taylor, 529 U.S. 362 (2000). Here, defense counsel aptly challenged the strength of the government's case against Godette and the adequacy of the government's investigation of Godette. See [D.E. 183] 31–36; [D.E. 180] 28; Strickland, 466 U.S. at 687–91.

Alternatively, Godette cannot establish his defense counsel's performance prejudiced him. Even if defense counsel performed deficiently by not identifying other heroin dealers who dealt with Hoover, Godette's conspiracy with Hoover is not mutually exclusive with the other drug dealers supplying heroin to Hoover. As the Fourth Circuit noted in affirming Godette's conviction and sentence, his defense could not overcome Godette's relationship with Hoover and the "ample evidence from which a jury could conclude that Godette both knew about the heroin at the [Havelock] apartment and had constructive possession of it." Godette, 2023 WL 119580, at *4. Thus, Godette's claim fails.

Next, Godette alleges that his counsel had an actual conflict of interest. See [D.E. 193-1] 18. A conflict of interest exists where an attorney "actively represent[s] conflicting interests." Cuyler v. Sullivan, 446 U.S. 335, 350 (1980). To prove this claim, Godette must show that counsel's actions "contraven[ed] [] the applicable ethical standards" and identify a plausible, objectively reasonable alternative defense strategy defense counsel did not pursue because of the actual conflict. See United States v. Nicholson, 475 F.3d 241, 250 (4th Cir. 2007); Mickens v. Taylor, 240 F.3d 348, 361 (4th Cir. 2001).

Godette has not plausibly alleged that defense counsel represented any interests adverse to his own or identified an alternative strategy defense counsel did not pursue because of an actual conflict. Thus, Godette has not plausibly alleged any conflict of interest. See Cuyler, 446 U.S. at 350.

B.

Citing the Fifth Amendment, Godette alleges that his superseding indictment did not "appraise [him] of the charges against him" and that the government constructively amended the indictment through its presentation of evidence at trial. See [D.E. 193-1] 19. Godette asserts that the indictment "did not specify" the relationship among the CI, Hoover, and Godette. Id. Godette also contends that the superseding indictment alleged that Godette conspired with Hoover to distribute heroin, but the government's evidence showed that the conspiracy was "predicated" on an agreement between the CI and Hoover. See id. at 20.

Godette did not raise this claim on direct appeal, and the general rule of procedural default bars Godette's from presenting this claim under section 2255. See, e.g., Massaro v. United States, 538 U.S. 500, 504 (2003); Bousley, 523 U.S. at 621; Fugit, 703 F.3d at 253. Furthermore, Godette has not plausibly alleged "actual innocence" or "cause and prejudice" resulting from the alleged error about which he now complains. See, e.g., Bousley, 523 U.S. at 622–24; Coleman v. Thompson, 501 U.S. 722, 753 (1991); United States v. Frady, 456 U.S. 152, 170 (1982); United States v. Pettiford, 612 F.3d 270, 280–85 (4th Cir. 2010). Thus, the claim fails.

Alternatively, an indictment must be "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). The indictment also must give the official statutory citation of the offense. See id. A constructive amendment to an indictment occurs when "the government, through its presentation of evidence or its argument, or

the district court, through its instructions to the jury, or both, broadens the bases for conviction beyond those charged in the indictment." United States v. Day, 700 F.3d 713, 720 (4th Cir. 2012) (citation omitted).

Godette's superseding indictment listed the statute Godette allegedly violated and the dates of the alleged conduct for all six counts. See [D.E. 87]. The indictment did not have to include the identity of Godette's co-conspirators. See United States v. Camara, 908 F.3d 41, 46 (4th Cir. 2018) ("Indeed, the government need not identify any co-conspirators," to convict a defendant of conspiracy so long as they prove there is an agreement between the defendant and another); United States v. Am. Waste Fibers Co., 809 F.2d 1044, 1046 (4th Cir. 1987) (per curiam) (citation omitted) ("The existence of the conspiracy, rather than the particular identity of the conspirators, is the essential element of the crime.").

The United States had the ability to prove Godette engaged in a conspiracy to distribute heroin with one other person to prove its case. See Camara, 908 F.3d at 46. The grand jury's failure to name Godette's co-conspirators did not render the indictment improper. See, e.g., Day, 700 F.3d at 720. The jury convicted Godette of the charged conspiracy. Godette has not plausibly alleged that the indictment was inadequate to inform him of the charges against him or that the government constructively amended the indictment at trial. See Fed. R. Crim. P. 7(c)(1); Camara, 908 F.3d at 46; Day, 700 F.3d at 720.

Godette also asserts his sentence of 360 months' imprisonment on each count exceeded the statutory maximum. See [D.E. 193-1] 21. Godette, however, failed to raise this claim on direct appeal. Thus, he procedurally defaulted the claim. See, e.g., Massaro, 538 U.S. at 504; Bousley, 523 U.S. at 621; Fugit, 703 F.3d at 253.

Alternatively, the claim fails on the merits. The statutory maximum on count one was life imprisonment. See 21 U.S.C. §§ 841(a)(1), (b)(1)(A); id. § 846. The statutory maximum on counts two, three, four, and five was 30 years' imprisonment. See id. §§ 841(a)(1), (b)(1)(C); 18 U.S.C. § 2. The statutory maximum on count six was life imprisonment. See 21 U.S.C. §§ 841(a)(1), (b)(1)(A). The court did not sentence Godette above the statutory maximum. Thus, the claim fails.

After reviewing the claims presented in Godette's section 2255 motion, the court finds that reasonable jurists would not find the treatment of Godette's claims debatable or wrong, and that the claims do not deserve encouragement to proceed any further. Thus, the court denies a certificate of appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

III.

In sum, the court DENIES petitioner's motion to show cause [D.E. 196], GRANTS the government's motion to dismiss [D.E. 204], DISMISSES petitioner's motion to vacate under section 2255 [D.E. 193, 200], and DENIES a certificate of appealability.

SO ORDERED. This 25 day of September, 2026.

JAMES C. DEVER III
United States District Judge